PNE AOA MEDIA, L.L.C., Plaintiff-Appellant v. JACKSON COUNTY, JACKSON COUNTY BOARD OF COMMISSIONERS, and THE NORTH CAROLINA DEPARTMENT OF TRANSPORTATION, Defendants-Appellees

No. COA00-1239

(Filed 16 October 2001)

**1. Zoning— billboard moratorium—local ordinance—not preempted by state law**

A local outdoor sign moratorium was properly passed and was not preempted by state law where PNE built a new billboard without the required DOT permit because an old billboard had not yet been removed; the Outdoor Advertising Control Act, N.C.G.S. § 136-134, provides 30 days for curing defects; and, in the interim, the Jackson County Board of Commissioners passed a sign moratorium. DOT must honor local rules and moratoriums and this local moratorium was properly in place at the time PNE

filed its sign permit application. PNE failed to secure a DOT permit which it knew it needed; its own inaction caused its pecuniary loss.

**2. Zoning— billboard moratorium—passed without notice— police power**

A local outdoor advertising sign moratorium was properly passed by a county board of commissioners despite the absence of notice where the moratorium and subsequent ordinance were passed pursuant to the general police powers of N.C.G.S. § 153A-121. No notice or public hearing was required.

**3. Zoning— common law vested rights doctrine—billboard moratorium—good faith—building permit**

Plaintiff did not have a common law vested property right to erect a billboard where the county passed a sign moratorium between the time plaintiff began construction and the time it applied for a required DOT permit. The common law vested rights doctrine has four elements; plaintiff satisfied the first and fourth elements in that it made expenditures prior to the amendment of the zoning ordinance and in that the ordinance was a detriment to its pecuniary interest, but did not satisfy the second and third elements in that plaintiff knew the proper course for securing DOT permits and did not act in good faith, and did not rely on the issuance of a valid building permit. Even though no county permit was required, it is clear that the necessary DOT permit was not issued before plaintiff began to erect the sign.

**4. Zoning— statutory vested right—billboard moratorium— police power**

Plaintiff did not have a statutory vested right to erect a billboard under N.C.G.S. § 153A-344.1 where there were no local regulations at the time it began building. The local sign moratorium and subsequent ordinance were passed under the general police powers granted to counties by N.C.G.S. § 153A-121.

**5. Constitutional Law— due process—billboard moratorium without notice—no vested property right—judicial review provided**

Plaintiff's due process rights were not violated where it began construction of a billboard without the required DOT permit and a local sign moratorium was passed without notice just before plaintiff applied for the permit. There was no need for notice and

a hearing because PNE did not have a vested property right; moreover, plaintiff could and did challenge DOT's determination that its sign was illegal by filing a petition for judicial review under N.C.G.S. § 136-134.1.

Appeal by plaintiff from order entered 15 June 2000 by Judge Marlene Hyatt in Jackson County Superior Court. Heard in the Court of Appeals 13 September 2001.

*Charles F. McDarris and Bradford A. Williams, for plaintiff appellant.*

*Hunter, Large & Sherrill, P.L.L.C., by Raymond D. Large, Jr., for defendant appellees.*

McCULLOUGH, Judge.

Plaintiff PNE AOA Media, L.L.C. (PNE) is a limited liability corporation which provides off-premises advertising to businesses, mainly in the form of outdoor billboards. In July 1999, PNE leased a parcel of land along State Highway 441 outside the town limits of Dillsboro, North Carolina, but within the jurisdiction of Jackson County. On 13 and 14 August 1999, PNE erected a steel monopole sign structure on its property; PNE also bought the existing billboard, which was approximately 300 feet from the new structure on the same parcel of land. The existing billboard had previously been authorized by the North Carolina Department of Transportation (DOT); however, PNE had to dismantle and remove the old billboard before DOT could issue a permit for the new structure, since the two billboards were within 300 feet of each other, in violation of DOT regulations.

Prior to erecting the sign on the property, PNE employees talked with Buddy Burrell, a DOT employee, and notified him that a new sign would soon be erected on the land. According to plaintiff, Mr. Burrell told PNE the sign was in compliance with the State's requirements, and also stated that DOT would issue a permit for the new sign as soon as the old sign was removed from the premises.

In July 1999, PNE employee Julie Snipes contacted the Jackson County Planning Department and asked whether Jackson County required any special permits for the new sign. She was told that Jackson County did not require any permits. Thereafter, PNE employees Frank Moody and Robert Shipman went to the Jackson County Land Records Department and located the map that included

PNE AOA MEDIA, L.L.C. v. JACKSON CTY.

[146 N.C. App. 470 (2001)]

the newly purchased tract of land. The two discussed the location with the Jackson County Director of Land Records, Bobby McMahan, who again confirmed that Jackson County did not require any permits to be filed for PNE's new sign.

PNE proceeded to erect the steel monopole sign structure on 13 and 14 August 1999, though it did not place an advertisement upon it. At that time, PNE had not secured a permit from DOT. On 18 August 1999, the Jackson County Board of Commissioners (Board of Commissioners) met, and among other things, considered an outdoor advertising sign moratorium; this sixty-day moratorium was passed on 19 August 1999. The Board of Commissioners did not advertise or publish notice to the public that it was considering the moratorium, and the official agenda of the meeting did not indicate that a moratorium would be discussed.

PNE delivered its sign permit application to DOT on 20 August 1999. At that time, DOT informed PNE that Jackson County had voted on, and approved, a sign moratorium the night before. DOT also told PNE that it could not grant the permit because it was prohibited from issuing sign permits that conflicted with a county zoning code. PNE's steel skeleton structure remained on the premises, but no billboard was ever erected.

PNE filed its initial complaint on 12 October 1999. PNE also filed an amended complaint on 18 October 1999, alleging that Jackson County's moratorium was illegal and violated PNE's constitutional, statutory and common law vested rights. On the same date, PNE also filed a petition for writ of certiorari and a request for declaratory relief, asking the trial court to declare the Jackson County moratorium "null and void and of no legal effect[.]"

On 22 November 1999, DOT answered, responded to PNE's petition, and moved to dismiss the complaint against it on the grounds of sovereign immunity, lack of subject matter jurisdiction, improper venue, and failure to state a claim upon which relief could be granted. On 9 December 1999, the Board of Commissioners and Jackson County filed a document entitled "Motions, Defenses, Answer to Amended Complaint and Response to Petition for Writ of Certiorari," as well as a counterclaim requesting temporary and permanent injunctions against PNE's sign.

On 28 December 1999, the trial court denied plaintiff's petition for writ of certiorari. Both plaintiff and defendants Jackson County and

the Board of Commissioners filed motions for summary judgment in April 2000. On 15 June 2000, the trial court denied plaintiff's motion for summary judgment and granted DOT's motion to dismiss plaintiff's complaint against it. The trial court also granted summary judgment in favor of the Board of Commissioners and Jackson County with regard to their counterclaim requesting temporary and permanent injunctions against plaintiff's sign. Pursuant to the trial court's order, plaintiff was required to dismantle and remove the steel skeleton within 30 days of the order.

Plaintiff appealed to this Court on 14 July 2000. Plaintiff also filed a motion requesting a stay of the trial court's decision pending appeal so that its steel structure could remain in place. The trial court granted PNE's motion for a stay on 31 July 2000.

On appeal, plaintiff brings forth seven assignments of error, all of which revolve around PNE's contention that the trial court erred in granting summary judgment to defendants. For the reasons set forth, we disagree with PNE's arguments and affirm the trial court's grant of summary judgment to defendants.

When a party files a motion for summary judgment pursuant to N.C. Gen. Stat. § 1A-1, Rule 56(c) (1999), this Court must determine whether the trial court properly ruled that no genuine issue of material fact existed such that the moving party was entitled to judgment as a matter of law. *Murray v. Nationwide Mut. Ins. Co.*, 123 N.C. App. 1, 8, 472 S.E.2d 358, 362 (1996), *disc. reviews denied*, 345 N.C. 344, 483 S.E.2d 172-73 (1997). "In addition, the record is to be viewed in the light most favorable to the non-movant, giving it the benefit of all inferences which reasonably arise therefrom." *Id.* When making its determination, the trial court is to consider evidence "includ[ing] admissions in the pleadings, depositions on file, answers to Rule 33 interrogatories, admissions on file . . . affidavits, and any other material which would be admissible in evidence or of which judicial notice may properly be taken." *Kessing v. National Mortgage Corp.*, 278 N.C. 523, 533, 180 S.E.2d 823, 829 (1971). With this standard of review in mind, we turn to the allegations of PNE's complaint.

## Preemption

[1] PNE first argues that the Jackson County sign moratorium preempted North Carolina's Outdoor Advertising Control Act, N.C. Gen. Stat. § 136-126, *et. seq.* (1999), because it cut short the statutory thirty-day right to cure defects in outdoor advertising provided

by N.C. Gen. Stat. § 136-134 (1999). N.C. Gen. Stat. § 136-134 states that

> any outdoor advertising maintained without a permit regard-less of the date of erection shall be illegal and shall constitute a nuisance. The Department of Transportation or its agents shall give 30 days['] notice to the owner of the illegal outdoor advertis-ing . . . to remove the outdoor advertising or to make it conform to the provisions of this Article or rules adopted by the Department of Transportation hereunder. The Department of Transportation or its agents shall have the right to remove the illegal outdoor advertising at the expense of the owner if the owner fails to remove the outdoor advertisement or to make it conform to the provisions of this Article or rules issued by the Department of Transportation within 30 days after receipt of such notice . . . .

PNE applied for its permit from DOT on 20 August 1999, one day after the Jackson County sign moratorium was passed. Because PNE's sign was erected without a permit, it is a nuisance as that term is defined by N.C. Gen. Stat. § 136-134; thus, the issue of preemption is properly before this Court.

It is well settled that state regulation of a particular field pre-empts county and municipal rules which govern the same issue and conflict with the state provision. *Greene v. City of Winston-Salem,* 287 N.C. 66, 73-74, 213 S.E.2d 231, 235-36 (1975). If there is discord between the state provisions and the municipal or county provisions, the municipal and county provisions "must give way." *Id.* at 73, 213 S.E.2d at 236 (quoting *Town of Washington v. Hammond,* 76 N.C. 33 (1877)). Moreover, if the state law clearly shows a legislative intent to provide "a complete and integrated regulatory scheme to the exclu-sion of local regulation[]" in a particular area of law, then the local rules must be consistent with the General Assembly's legislative intent. *See* N.C. Gen. Stat. § 160A-174(b)(5) (1999); and *Greene,* 287 N.C. at 76, 213 S.E.2d at 237. Plaintiff contends that the General Assembly intended the state rules for outdoor advertising to harmo-nize with the local rules, as well as DOT's regulations. Thus, plaintiff argues, the statutory thirty-day right to cure found in N.C. Gen. Stat. § 136-134 conflicted with Jackson County's moratorium, in which case the moratorium should have given way. We disagree.

PNE asserts that its statutory right to cure defects in its sign structure began with receipt of DOT's letter on 17 August 1999

and lasted for thirty days, during which PNE could remove the old billboard so its new sign would comply with DOT regulations. The Board of Commissioners passed the Jackson County moratorium on 19 August 1999. At that time, PNE had not yet filed for a permit from DOT, so its sign properly fell under the scope of the moratorium.

While DOT is not responsible for interpreting the legality of zoning regulations or the legality of moratoriums, it must honor properly passed local rules and moratoriums. The Board of Commissioners expressly stated that Jackson County's moratorium was passed pursuant to N.C. Gen. Stat. § 153A-121(a) (1999), which confers general police powers upon the county as follows:

> (a) A county may by ordinance define, regulate, prohibit, or abate acts, omissions, or conditions detrimental to the health, safety, or welfare of its citizens and the peace and dignity of the county; and may define and abate nuisances.

We discern no procedural problems with the passage of the moratorium, and it was therefore properly in place at the time PNE filed its sign permit application with DOT on 20 August 1999.

While conceding that the Jackson County moratorium cut short PNE's right to cure, defendants maintain that PNE was at fault because it erected the steel structure without first securing a permit from DOT. We agree. Defendants point to the deposition of Frank Moody, the General Manager of PNE. Mr. Moody explained that he had worked in the outdoor advertising business for over sixteen years. Over that span, his job duties included sales, leasing, and general management. Mr. Moody started his own outdoor advertising business in 1989, and part of his job was to select sites for outdoor billboards and secure the proper permits. After explaining how he selected the tract of land along State Highway 441, Mr. Moody was asked whether he secured a permit before the steel structure went up. He responded as follows:

> [Q.] Prior to this time have you—do you usually get a permit before you erect a sign?
>
> A. Yep.
>
> Q. Do you do that most of the time or some of the time?
>
> A. All the time.

Q. You do it all the time?

A. Yeah.

Q. So this would be the only instance in which you have ever erected a sign without first obtaining the necessary permits. Is that true?

A. I believe so, yeah.

Mr. Moody stated he and his coworkers spoke to several people at DOT and in Jackson County and determined that the only permit necessary was the one issued by DOT. Mr. Moody stated that he knew PNE's new sign was too close to an existing sign, and that the existing sign would have to be purchased and dismantled before a DOT permit could be issued. He further explained that there was confusion about the sequence of events because Mr. Buddy Burrell, his contact at DOT, was out sick and was unavailable for consultation a few days before construction commenced, and before the permit application was filed. As a result, PNE's new sign was erected too early, before Mr. Moody had secured a permit from DOT.

PNE knew it needed a permit from DOT, and failed to secure one. At the same time, Jackson County and its Board of Commissioners properly passed their sixty-day moratorium on 19 August 1999. PNE filed for its permit one day later, on 20 August 1999. Had PNE filed sooner with DOT, it would have learned that its sign was too close to the existing billboard, and it could have taken steps to remedy the situation. However, PNE failed to do so, and was bound by the terms of the newly enacted moratorium. Based on these facts, we decline to assist PNE on appeal when its own inaction caused it to suffer pecuniary losses. We conclude that the Jackson County moratorium on outdoor advertising was properly passed, and that it does not preempt state law. Plaintiff's first assignment of error is overruled.

### Notice

[2] PNE next argues that Jackson County's moratorium was enacted in violation of the notice provisions of N.C. Gen. Stat. § 153A-323 (1999) and that it was therefore *ultra vires*. We disagree.

Article 18 of the North Carolina General Statutes sets forth the rules for county planning and regulation. *See* N.C. Gen. Stat. § 153A-320, *et seq.* (1999). Before adopting ordinances pursuant to Article 18, counties must follow certain procedural and notice requirements. *Vulcan Materials Co. v. Iredell County*, 103 N.C.

App. 779, 782, 407 S.E.2d 283, 285-86 (1991). Specifically, N.C. Gen. Stat. § 153A-323 states that

> [b]efore adopting or amending any ordinance authorized by this Article . . . the board of commissioners shall hold a public hearing on the ordinance or amendment. The board shall cause notice of the hearing to be published once a week for two successive calendar weeks. The notice shall be published the first time not less than 10 days nor more than 25 days before the date fixed for the hearing. In computing such period, the day of publication is not to be included but the day of the hearing shall be included.

The evidence in this case indicates that no notice was given either that a sixty-day moratorium was being discussed by the Board of Commissioners on 18 August 1999 or that the moratorium was adopted on 19 August 1999.

Defendants maintain that Jackson County and the Board of Commissioners enacted the sign moratorium under the general police powers granted to counties under N.C. Gen. Stat. § 153A-121(a). We agree. We note first that Article II of Jackson County's "Off-Premise Sign Control Ordinance, Jackson County, North Carolina" states:

> This ordinance is established by the Jackson County Board of Commissioners *pursuant to the authority conferred in Chapter 153(A)-121(a) of the North Carolina General Statutes.* The Board of Commissioners hereby ordains and enacts into law the following articles and sections.

(Emphasis added.) Thus, by its very terms, Jackson County made its moratorium part of its official Off-Premise Sign Control Ordinance via N.C. Gen. Stat. § 153A-121(a), rather than by Article 18 of Chapter 153A.

The issue of ordinance passage and statutory authority was thoroughly discussed in *Summey Outdoor Advertising v. County of Henderson,* 96 N.C. App. 533, 386 S.E.2d 439 (1989), *disc. review denied,* 326 N.C. 486, 392 S.E.2d 101 (1990). The *Summey* Court stated

> [w]e do not believe that because defendant has authority to regulate signs under G.S. 153A-340, it may not regulate signs in a similar manner under the general police powers in G.S. 153A-121 (allowing regulation of "conditions detrimental to the health,

safety or welfare of its citizens and the peace and dignity of the county . . .”). G.S. 153A-121 and 153A-340 do not operate exclusively of each other. *See* G.S. 153A-124 (Specific powers enumerated in Article 6, Chapter 153A to “regulate, prohibit or abate acts, omissions, or conditions is not exclusive [or] a limit on the general authority to adopt ordinances . . . [under] G.S. 153A-121.”).

*Id.* at 538, 386 S.E.2d at 443.

We therefore conclude that Jackson County’s sixty-day moratorium and subsequent ordinance were passed pursuant to the general police powers of N.C. Gen. Stat. § 153A-121, and as such, no notice or public hearing was required. Plaintiff’s second assignment of error is overruled.

### Common Law Vested Right

[3] PNE next argues that it acted in good faith and had common law vested property rights to erect a sign on its property because it reasonably relied on statements from defendants that no local permits were needed to proceed. Defendants, on the other hand, argue that PNE did not act in good faith and cannot, therefore, assert common law vested property rights. We agree with defendants.

The common law vested rights doctrine “ ‘has evolved as a constitutional limitation on the state’s exercise of its police power[s].’ ” *Browning-Ferris Industries v. Guilford County Bd. of Adj.*, 126 N.C. App. 168, 171, 484 S.E.2d 411, 414 (1997) (quoting *Godfrey v. Zoning Bd. of Adjustment*, 317 N.C. 51, 62, 344 S.E.2d 272, 279 (1986)). The *Browning-Ferris* Court also explained that

> [a] party’s common law right to develop and/or construct vests when: (1) the party has made, prior to the amendment of a zoning ordinance, expenditures or incurred contractual obligations “substantial in amount, incidental to or as part of the acquisition of the building site or the construction or equipment of the proposed building[;]” (2) the obligations and/or expenditures are incurred in good faith[;] (3) the obligations and/or expenditures were made in reasonable reliance on and after the issuance of a valid building permit, if such permit is required, authorizing the use requested by the party[;] . . . and (4) the amended ordinance is a detriment to the party.

*Browning-Ferris*, 126 N.C. App. at 171-72, 484 S.E.2d at 414 (citations omitted).

In this case, there is evidence that plaintiff meets element one, because it leased the property along State Highway 441, bought the existing sign, hired contractors to build and erect the steel skeleton and the new sign, and hired people to remove the existing sign. Plaintiff has also shown that the Jackson County ordinance is a detriment to its pecuniary interests, because it loses $1,500.00 per month in advertising revenues which it could have earned had it secured the permit allowing it to post advertisements.

However, plaintiff did not act in good faith. Though plaintiff talked to employees of DOT and Jackson County, Mr. Moody proceeded to take on the project without first securing the permit from DOT, and this was the first time he had ever done so. Mr. Moody was highly experienced and knew the proper course of action for securing permits from DOT.

We also reject plaintiff's argument that its obligations and expenditures were made in reasonable reliance on and after the issuance of a valid building permit. While it is true that no county permit was required, a permit from DOT was, and it is clear that PNE had not secured that permit before it began to erect the sign along State Highway 441.

Plaintiff has failed to show that it met all four elements necessary to establish that it had a common law vested property right. Plaintiff's third assignment of error is therefore overruled.

### Statutory Vested Right

[4] By its fourth assignment of error, PNE argues that it had a statutory vested right to erect a sign on the property when no local regulations governed the erection of the sign at the time plaintiff began building. Plaintiff also argues that defendants had full knowledge of PNE's actions at all times relevant to this lawsuit. While plaintiff may technically be correct that no local rule was in effect, we can discern no reason why Jackson County and the Board of Commissioners could not act at the time and in the manner they did.

Plaintiff cites N.C. Gen. Stat. § 153A-344.1(b) (1999) and argues that it had a vested right to complete the development of real property "under the terms and conditions of the site specific development plan or the phased development plan." Plaintiff also argues that the plan must be made after notice and a public hearing. N.C. Gen. Stat. § 153A-344.1(c). PNE characterizes these factors as creating a genuine issue of material fact as to whether it had a statutory vested

right to erect the sign, such that summary judgment was improper. We disagree.

As previously discussed, Jackson County did not have a comprehensive zoning plan or ordinance in effect when PNE began building on its leased land. Plaintiff's arguments assume that the Jackson County moratorium and subsequent ordinance were passed pursuant to N.C. Gen. Stat: § 153A-344.1, such that notice and a public hearing were required. However, we have concluded that the Jackson County moratorium and ordinance were passed pursuant to the general police powers granted to counties under N.C. Gen. Stat. § 153A-121. This statute does not have notice and public hearing requirements, nor does it contain a provision for a statutory vested right. We therefore deem plaintiff's arguments to be without merit, and overrule this assignment of error.

## Due Process Considerations

[5] By its fifth assignment of error, PNE argues that the Board of Commissioners and Jackson County violated its due process rights by failing to provide public notice of the proposed moratorium, and thus the moratorium constituted an unjust taking of its vested right without just compensation. We disagree.

> " 'A vested right, entitled to protection from legislation, must be something more than a *mere expectation* based upon an anticipated continuance of the existing law; *it must have become a title*, legal or equitable, *to the present or future enjoyment of · property, a demand, or legal exemption from a demand by another.' "

*State ex rel. Utilities Comm. v. Carolina Utility Cust. Assn.*, 336 N.C. 657, 678, 446 S.E.2d 332, 344-45 (1994) (quoting *Armstrong v. Armstrong*, 322 N.C. 396, 402, 368 S.E.2d 595, 598 (1988) (quoting *Godfrey v. State*, 84 Wash. 2d 959, 963, 530 P.2d 630, 632 (1975))). While it is true that a governmental entity must afford procedural due process to a party who has a vested right to property before that party's right is altered, we do not find a vested right for PNE in this case. We further note that

> [w]hile the demonstration of a protected "property" interest is a condition precedent to procedural due process protection, the existence of the "property" interest does not resolve the matter before this Court. We must inquire further and determine exactly what procedure or "process" is due. The fundamental

premise of procedural due process protection is notice and the opportunity to be heard. Moreover, the opportunity to be heard must be "at a meaningful time and in a meaningful manner."

*Peace v. Employment Sec. Comm'n,* 349 N.C. 315, 322, 507 S.E.2d 272, 278 (1998) (citations omitted).

We are persuaded by defendants' position that there was no need for notice and a hearing because PNE did not have a vested property right in this case. Defendants correctly point out that the Board of Commissioners' meetings are open to the public, and there is time reserved at each meeting for public comment. We do not believe that PNE was entitled to notice beyond that given to the general public. We again note that the Board of Commissioners was not required to provide public notice when enacting an ordinance pursuant to N.C. Gen. Stat. § 153A-121. Compare *Summey,* 96 N.C. App. 533, 386 S.E.2d 439 (Henderson County ordinance passed pursuant to N.C. Gen. Stat. § 153A-121(a), even without the procedural safeguards required when proceeding under Article 18).

We also agree with defendants that plaintiff enjoyed ample due process under N.C. Gen. Stat. § 136-134.1 (1999), which provides an avenue for plaintiff to challenge DOT's determination that its sign was illegal. Under N.C. Gen. Stat. § 136-134.1, PNE can file a petition for judicial review of the Secretary of Transportation's determination that PNE's sign was illegal. After examining the record, we note that plaintiff in fact filed such a petition with the Wake County Superior Court on 5 November 1999. Such protection is adequate in this situation, and we therefore overrule plaintiff's fifth assignment of error.

## Other Arguments

By its sixth assignment of error, PNE argues that the trial court acted arbitrarily and capriciously by granting summary judgment to the Board of Commissioners and Jackson County and ordering plaintiff to dismantle and remove the sign along State Highway 441. This argument is merely an amalgamation of plaintiff's previous arguments, and adds no new information. For the reasons previously stated herein, we reject plaintiff's argument and overrule this assignment of error.

Lastly, PNE argues that the trial court acted arbitrarily and capriciously by granting DOT's motion to dismiss. However, plaintiff's assignment of error was rendered moot by this Court's order on 27 June 2001, which dismissed DOT as a defendant in this case.

The trial court's grant of summary judgment to Jackson County and the Board of Commissioners is affirmed. The trial court's order directing plaintiff to dismantle and remove its sign erected along State Highway 441 is also affirmed.

Affirmed.

Judges MARTIN and BIGGS concur.