**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 08-1409**

RICHARD S. GRIFFIN; GRIFFIN FARM & LANDFILL, INC.,

Plaintiffs - Appellants,

v.

TOWN OF UNIONVILLE, NORTH CAROLINA,

Defendant - Appellee.

Appeal from the United States District Court for the Western
District of North Carolina, at Charlotte.   Robert J.
Conrad, Jr., Chief District Judge.   (3:05-cv-00514-RJC-CH)

Argued:  May 13, 2009                   Decided:  July 27, 2009

Before NIEMEYER, Circuit Judge, C. Arlen BEAM, Senior Circuit
Judge of the United States Court of Appeals for the Eighth
Circuit, sitting by designation, and Joseph F. ANDERSON, Jr.,
United States District Judge for the District of South Carolina,
sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:** T. Jonathan Adams, HAMILTON, MOON, STEPHENS, STEELE &
MARTIN, PLLC, Charlotte, North Carolina, for Appellants.  Thomas
Norfleet Griffin, III, PARKER, POE, ADAMS & BERNSTEIN, LLP,
Charlotte, North Carolina, for Appellee.  **ON BRIEF:** Mark R.
Kutny, Travis W. Moon, HAMILTON, MOON, STEPHENS, STEELE &
MARTIN, PLLC, Charlotte, North Carolina, for Appellant Griffin
Farm & Landfill, Inc.; R. Keith Johnson, R. KEITH JOHNSON, P.A.,
Stanley, North Carolina, for Appellant Richard S. Griffin.  G.

Nicholas Herman, THE BROUGH LAW FIRM, Chapel Hill, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Richard Griffin appeals the district court's grant of summary judgment in favor of the Town of Unionville, North Carolina ("the Town"). We affirm.

I.

In 1992, Griffin began operating a demolition landfill, more accurately now known as a "land clearing and inert debris" (LCID) landfill, pursuant to a permit issued by the Union County Health Department. The permit authorized the LCID landfill to accept waste, limited to stumps, limbs, leaves, concrete, brick, untreated wood, asphalt, uncontaminated earth, sand or rocks. In 1993, Griffin obtained "prior approval" from Union County (the county) authorizing him to expand his landfill by ten acres. This addition was authorized as a "construction and demolition" (C & D) landfill. Griffin did not begin operating the C & D landfill at that time, but received the prior local approval so that he could get a state permit, which was required. In 1995, the state natural resources department issued Griffin an operational permit for the C & D installation. This permit was amended and renewed by the state a number of times through the year 2005.

In January 1997, the county approved Griffin's application to expand his landfill again. In the summer of 1997, the county changed its land use ordinance to require that a landfill operator obtain a special use permit (SUP) from the county, in addition to the required state permits. So Griffin applied for a SUP and included all of his property—his then-existing LCID and C & D landfills, as well as the proposed expansion—in the SUP application. In November 1997, the county approved Griffin's request for a SUP. The SUP allowed construction of a "demolition landfill."[1] The county land use ordinance in effect at that time defined "demolition landfill" to include "debris associated with the construction or demolition of housing or buildings" and expressly prohibited industrial waste. The SUP also required that any modifications to proposed uses on the property covered by the SUP be pointed out to the county in writing, as required by the county land use ordinance. This ordinance provided that insignificant or minor changes were

---

[1] Part of the difficulty with reciting the facts in this case is that the county continued to use the term "demolition landfill," while the state administrative regulations changed what was known as a demolition landfill to an LCID landfill in 1993. At the time the SUP was granted, the county's definition of demolition landfill allowed waste authorized by the state-defined LCID and C & D landfills. J.A. 399; 15A N.C. Admin. Code 13B.0101(11), (22), & (23); 15A N.C. Admin. Code 13B.0532(8). When amended by the county in 1998, the term "demolition landfill" exceeded what was allowed in an LCID and C & D landfill by allowing industrial solid waste.

permitted without formal written approval, but any changes of significance had to be approved in the same manner as a new application for a SUP. It is undisputed that Griffin has never applied to the county for an amendment or modification to the 1997 SUP. Following issuance of the SUP in November 1997, Griffin retained an engineering firm to perform work on the property and incurred expenses.

At a June 1998 County Planning Board meeting, Griffin asked the county to amend the definition of a demolition landfill in the county's land use ordinance to allow for the disposal of nonhazardous industrial solid waste. The matter was considered further and approved at a July 1998 public hearing. The crux of the instant dispute is Griffin's assertion that this amendment was intended to retroactively apply to Griffin's 1997 SUP. Throughout this time, Griffin continued to have the engineering firm prepare the landfill expansion for waste.

In November 1998, the Town revived its corporate charter, making it an incorporated municipality within the county of Union and in the state of North Carolina. The current and proposed landfills were included within its boundaries. Nonetheless, because the Town did not have a land use ordinance, the Town conferred jurisdiction on the county to regulate zoning and land use issues until October 2003 when the land use ordinance adopted in June 2003 became effective.

5

In July 1999, Griffin applied to the state for a permit authorizing him to operate an industrial solid waste landfill on his property. In response, in September 2001, the state informed Griffin that in order to operate the proposed landfill, pursuant to North Carolina General Statute §§ 130A-294(b1)(3) & (4), he would need local government zoning approval, and would need to obtain a franchise from the local government.

Griffin accordingly sought to obtain a local franchise, but at that time, as previously noted, the Town did not have a land use ordinance or a local franchise ordinance, having temporarily ceded its authority on these issues to the county. Moreover, although the county had a land use ordinance, it did not have a franchise ordinance either, and thus Griffin never was able to obtain a franchise from the county.

In March 2003, Griffin asked the Town council to adopt a franchise ordinance. The Town council passed a "Solid Waste Franchise Ordinance for the Town of Unionville" in June 2003. The franchise ordinance allowed for C & D and LCID landfills only. Also in June 2003, the Town adopted a Land Use Ordinance, to be effective October 1, 2003. The definition of "demolition landfill" in the Town's land use ordinance was the same definition as the county's 1998 amended definition—it authorized the inclusion of industrial solid waste in a demolition

6

landfill, creating a conflict with the franchise ordinance which only allowed C & D and LCID landfill waste within the Town.

Griffin and the Town entered into a franchise agreement in February 2004. The franchise agreement, in keeping with the ordinance, only authorized Griffin to operate landfills accepting C & D and LCID waste, not industrial solid waste. After obtaining the franchise, Griffin also confirmed, by way of a letter from the Town's land use administrator, that his 1997 county-issued SUP was still valid in the Town. Armed with these two pieces of information (the franchise and the presumably valid SUP), Griffin applied for and received an amended permit from the state for the continued operation of his C & D landfill in March 2005.

At this point, Griffin had official state authorization to operate a C & D landfill and though the record is not entirely clear on this point, he either did not need state authorization for an LCID, or he had the requisite LCID state permit. See J.A. 274. However, he still did not have state authorization to operate an industrial solid waste landfill. So in June 2005, Griffin sought a franchise from the Town to operate an industrial solid waste landfill. As part of his proposal, Griffin asked the Town to amend the franchise ordinance to allow for such a landfill. Various public meetings and requests for information ensued. Instead of amending the franchise ordinance

7

as Griffin suggested, in May 2006, the Town amended the land use ordinance to delete from the definition of a demolition landfill the term "industrial solid waste." This action effectively denied Griffin's request for a franchise to operate an industrial solid waste landfill. Because he never obtained local approval, Griffin did not seek a permit from the state to operate an industrial solid waste landfill, and instead brought the current action.

In his complaint, Griffin alleged that the Town's actions denied him due process and equal protection under federal and North Carolina law, and that he had a vested right to operate the industrial solid waste landfill. Griffin also sought specific performance and declaratory relief that the ordinance was unconstitutional. He alleged that the Town violated his rights by failing to amend the franchise ordinance because he had a common law vested right to construct and operate the installation as an industrial solid waste landfill and he spent over $750,000 in engineering fees to prepare the landfill. On cross-motions for summary judgment, the district court granted summary judgment to the Town, finding that Griffin did not have a vested right to operate an industrial solid waste landfill. The court also refused to declare the local ordinance unconstitutional. Griffin appeals the rulings regarding his

vested right to operate an industrial solid waste landfill and specific performance.

## II.

Our review on appeal from the district court's grant of summary judgment is de novo. Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 132 (4th Cir. 2002).

Under North Carolina law, whether Griffin possessed a vested right to a franchise for an industrial solid waste landfill turns on whether (1) he has made substantial expenditures; (2) the expenditures were made in good faith; (3) the expenditures were made in reasonable reliance on and after the issuance of valid governmental approval; and (4) he would be harmed by a change in governmental requirements. Browning-Ferris Indust. Of S. Atl., Inc. v. Guilford County Bd. of Adjustment, 484 S.E.2d 411, 414 (N.C. Ct. App. 1997).

Griffin's vested rights claim is that he spent approximately $750,000 in connection with his application to the state for a permit to operate an industrial solid waste landfill after relying upon (1) the 1997 SUP issued by the county, (2) the county's 1998 amendment to the definition of demolition landfill allowing industrial solid waste in those landfills, and (3) the Town's 2004 letter advising Griffin that it would recognize Griffin's 1997 SUP. Griffin alleges that, by virtue

9

of these authorizations, he received specific and valid approvals from the county and the Town to construct and operate an industrial solid waste landfill.

It is undisputed that Griffin has made substantial expenditures in pursuit of operating the industrial solid waste landfill. The remaining prongs from Browning-Ferris require us to examine whether Griffin's expenses were made in good faith and with reasonable reliance upon purported government approval for the project.

We find that Griffin did not make these expenditures in good faith or in reasonable reliance upon the Town, county or state approval for the project. When Griffin applied to the county for the SUP, there was no mention of industrial solid waste in the application or in the resulting permit. In fact, the SUP was issued at a time when the county's land use ordinance expressly prohibited landfills from disposing of industrial solid waste. Under North Carolina law, the SUP is limited by its own terms to those uses presented to the county in obtaining it. Westminster Homes, Inc. v. Town of Cary Zoning Bd. of Adjustment, 554 S.E.2d 634, 638 (N.C. 2001). Griffin specifically represented to the county that his landfill would be used to dispose of construction and demolition waste. He also told the county board that his construction and demolition landfill operated under a valid state permit for this type of

10

landfill and that no "liner" was required to contain the waste. A liner would have been required for an industrial solid waste landfill.

Finally, and perhaps most importantly, Griffin did not apply to the county or the Town to amend or modify the 1997 SUP. Griffin instead chose to rely upon the 1998 amendment to the county's definition of a demolition landfill as a retroactive "amendment" to his SUP. However, the county's land use ordinance, and later the Town's, required specific procedures to amend or modify the terms of a SUP, and these actions were not taken by Griffin. Even in the 2004 letter from the Town recognizing the continued validity of the 1997 SUP, the letter's author reminded Griffin that any changes from the issued SUP would require approval of an amended permit by the Town. The SUP did not authorize Griffin to operate an industrial solid waste landfill. Accordingly, Griffin cannot validly argue that his county-issued 1997 SUP permitted him to rely in good faith upon the proposition that he would be able to operate an industrial solid waste landfill.

Nor did Griffin undertake his expenditures in reasonable reliance upon Town, county, or state government actions. The record reflects that he did not obtain all of the government permits necessary under North Carolina law to operate an industrial solid waste landfill. Although arguably overkill,

11

three authorizations are required to construct and operate an industrial solid waste landfill: local zoning approval, a local government franchise, and a permit from the State of North Carolina. N.C. Gen. Stat. Ann. §§ 130A-294(b1)(3) & (4).[2]

It is doubtful that Griffin obtained *any* of the required state permits for an industrial solid waste landfill. The only argument that he obtained zoning approval is that the SUP was retroactively amended when the county board changed the definition of a demolition landfill to include industrial solid waste. In light of our previous discussion, however, this argument carries little weight. Further, the franchise agreement with the Town in 2003 did not contain authorization for industrial solid waste. Likewise, the permit he received from the state only allowed him to continue to operate his C & D landfill, not an industrial solid waste landfill. None of Griffin's successful permit or franchise applications requested specific authorization to operate an industrial solid waste landfill. Where multiple permits or governmental approvals are required for a project, a landowner has no vested right to complete that project unless he makes his substantial expenditures in good faith reliance on and *after receiving* all

---

[2] We reject Griffin's arguments that this was either not the applicable statute or that his operation should be excepted from the statute's requirements.

requisite permits or other required approvals.  See, e.g., <u>PNE AOA Media, L.L.C. v. Jackson County</u>, 554 S.E.2d 657, 663 (N.C. Ct. App. 2001) (holding that expenditures made prior to acquiring necessary permits are not made in good faith reliance upon those permits, and company did not have a vested right to erect a billboard on a state highway).  Because Griffin never obtained the required permits for industrial solid waste landfills, he could not have expended funds in reasonable reliance upon such permits.

## III.

Though Griffin has been operating landfills in Union County and the Town since 1992, his landfills have never accepted industrial solid waste, and he has never obtained a valid permit to do so.  Therefore, he has no vested right to operate this category of landfill.  The decision of the district court is affirmed.

<u>AFFIRMED</u>