SANDY MUSH PROPERTIES, INC. Plaintiff (HANSON AGGREGATES SOUTHEAST, INC., Former Plaintiff) v. RUTHERFORD COUNTY, by and through THE RUTHERFORD COUNTY BOARD OF COMMISSIONERS, Defendants

No. COA02-1587-2

(Filed 4 May 2004)

**Zoning— building moratorium—public notice requirement**

After a rehearing (and with this opinion superseding the first), the Court of Appeals held that the trial court erred by not granting summary judgment for plaintiff in an action involving a building permit sought by plaintiff and a moratorium on heavy industry imposed by defendant. The moratorium dealt specifically with building permits and was therefore subject to the notice requirements of Article 18 of Chapter 153A, which were not met. N.C.G.S. § 153A-323.

Appeal by plaintiff from an order entered 3 September 2002 by Judge W. Douglas Albright in Rutherford County Superior Court. Heard in the Court of Appeals 11 September 2003.

*Bazzle & Carr, P.A., by Eugene M. Carr, III, Kennedy, Covington, Lobdell & Hickman, L.L.P., by Lacy H. Reaves and Amie Flowers Carmack, for plaintiff-appellant.*

*Sigmon, Clark, Mackie, Hutton, Hanvey, & Ferrell, P.A., by Warren A. Hutton, Forrest A. Ferrell and Stephen L. Palmer; Nanney, Dalton & Miller, L.L.P., by Walter H. Dalton and Elizabeth Thomas Miller, for defendant-appellee.*

HUNTER, Judge.

An opinion was filed in this case on 21 October 2003. On 25 November 2003, defendants filed a petition for rehearing. On 5 December 2003, we allowed that petition, reconsidering the case with the filing of additional briefs, and the hearing of oral arguments on 14 January 2004. The following opinion supersedes and replaces the opinion filed 21 October 2003.

Sandy Mush Properties, Inc. ("plaintiff") appeals an order denying its Motion for Summary Judgment and Motion to Amend Complaint; and granting Rutherford County's ("the County"), by and through the County Board of Commissioners ("the Board") (collectively "defendants"), Motion for Summary Judgment. For the reasons stated herein, we reverse.

On 21 June 2001, defendants ran a legal advertisement in *The Daily Courier*, a newspaper of general circulation in the County, noticing a public hearing to be held on 2 July 2001. The hearing was in reference to a proposed Polluting Industries Development Ordinance ("PIDO") that prohibited the operation of a new or expanded heavy industry within 2,000 feet of a church, school, residence or other structures.

At the time of the notice's publication, Hanson Aggregates Southeast, Inc. ("Hanson") had an option to lease a tract of land in the County from plaintiff that consisted of approximately 180 acres ("the Property") that was within 2,000 feet of a school boundary. On 26 June 2001, Hanson applied to the County Building Department for a building permit to operate a crushed stone quarry on the Property. The request was denied. Hanson was informed that it needed to obtain approval from the County Health Department for a septic tank and submit a set of building plans for the proposed site that were stamped by a North Carolina licensed engineer.

On 2 July 2001, the Board conducted a public hearing on the proposed PIDO. Hanson attended the hearing and spoke in opposition to the proposed ordinance. At the close of the hearing, a County Commissioner moved that an ordinance imposing a 120-day moratorium to prohibit the initiation of heavy industry in the County school zones be adopted, during which time the County Planning Commission could study a land use ordinance which would regulate future construction of heavy industry within school zones.[1] The motion was approved.

On 28 August 2001, the County Planning Commission recommended that the proposed PIDO not be adopted by the Board. Thereafter, Hanson renewed its application for a building permit on 31 August 2001 after having met those requirements that led to the application's initial denial. Nevertheless, the County Building

---

1. The land use ordinance that was studied during the 120-day moratorium would later be known as the School Zone Protective Ordinance.

Department denied Hanson's permit application again, basing that denial on the recent approval of the moratorium.

On 12 September 2001, Hanson filed a complaint against defendants requesting that they be enjoined from enforcing the moratorium because defendants had violated statutory procedures by not publishing adequate notice of the public hearing at which the moratorium was passed. Hanson's complaint also requested a Writ of Mandamus requiring defendants to issue it a building permit. Following a 28 September 2001 hearing on the matter, the trial court concluded that the moratorium "was not an exercise of the [County's] police power and was therefore invalid." Thus, defendants were enjoined from enforcing the moratorium and were ordered to issue Hanson the building permit; however, the court's order provided that its "findings of fact and conclusions of law concerning the injunction [were] not binding on any future court hearing this matter."

The Board met on 1 October 2001 to consider the School Zone Protective Ordinance ("SZPO"), which would prohibit the construction or operation of any heavy industry in areas identical to those listed in the moratorium. Notice of the hearing complied with relevant statutory procedures regarding ordinances that govern zoning. The Board unanimously voted to adopt the SZPO pursuant to the County's general police powers under Section 153A-121 of the North Carolina General Statutes.

Hanson filed an Amended Verified Complaint and Petition for Mandamus on 2 October 2001. Defendants answered and counterclaimed that Hanson should be enjoined from operating a crushed rock quarry on the Property because, inter alia, (1) the moratorium was properly enacted pursuant to the County's general police powers and therefore no notice was required, and (2) at no time prior to the adoption of the SZPO did Hanson have the requisite state permits or any vested statutory or common law right to operate a rock quarry on the Property. Following Hanson's reply to the counterclaim, defendants filed a Motion for Summary Judgment on 21 June 2002.

On 2 July 2002, it was announced that Hanson had terminated its lease with plaintiff and that plaintiff was willing to be substituted for Hanson in the action, ratifying all claims by Hanson. An order approving substitution of the parties was entered on 8 August 2002. Prior to the entry of the order, however, plaintiff filed a Motion to Amend (Hanson's Amended Verified) Complaint to add another claim on 30

July 2002, as well as its own Motion for Summary Judgment. Defendants filed an objection to the Motion to Amend Complaint.

The parties' motions were heard on 12 August 2002. The trial court subsequently denied both of plaintiff's motions and granted defendants' Motion for Summary Judgment. Finally, the court dismissed plaintiff's claims and dissolved the Writ of Mandamus and preliminary injunction issued as a result of the 28 September 2001 hearing. Plaintiff appeals.

Plaintiff assigns error to the trial court's denial of its Motion for Summary Judgment and grant of defendants' Motion for Summary Judgment. Specifically, plaintiff contends that the public hearing at which the moratorium was passed, ultimately resulting in the denial of its building permit, took place without sufficient notice pursuant to Section 153A-323 of our statutes. We agree.

Generally, "notice and public hearing are not mandated for the adoption of ordinances." *Vulcan Materials Co. v. Iredell County*, 103 N.C. App. 779, 782, 407 S.E.2d 283, 285 (1991). However, our statutes and case law recognize an exception for the adoption of any ordinance authorized by Article 18 of Chapter 153A. *Id.* "Article 18 governs zoning, subdivision regulation, building inspection (including issuance of building permits), and community development." *Id.* at 782, 407 S.E.2d at 286. "Before adopting or amending any ordinance *authorized* by this Article . . . , the board of commissioners shall hold a public hearing on the ordinance . . . [and] shall cause notice of the hearing to be published once a week for two successive calendar weeks. N.C. Gen. Stat. § 153A-323 (2003) (emphasis added). Failure to adhere to the notice requirements of Section 153A-323 will result in any subsequently enacted ordinance covered by Article 18 being invalid as demonstrated by this Court's holding in *Vulcan*.

In *Vulcan*, the plaintiff challenged a local ordinance imposing a sixty-day moratorium on the issuance of building permits pending the enactment of a zoning ordinance. The plaintiff asserted that the moratorium violated Section 153A-323 and its requirements of notice to the public and a public hearing prior to the moratorium's adoption. The trial court granted summary judgment in favor of the plaintiff and ordered that the requested building permit be granted. On appeal by the defendants, the *Vulcan* Court determined that no specific authority existed for the imposition of a moratorium on the issuance of building permits pending zoning. Nevertheless, it concluded that the

defendants' moratorium was within the purview of Article 18 because both zoning and ordinances imposing moratoriums that deal specifically with the issuance of building permits are governed by Article 18. Thus, the defendants' failure to hold a public hearing or give notice, as required under Section 153A-323, invalidated the moratorium. *Vulcan*, 103 N.C. App. at 782, 407 S.E.2d at 286.

Plaintiff contends that *Vulcan* is analogous to the present case; a contention defendants dispute. In turn, defendants cite *Maynor v. Onslow County*, 127 N.C. App. 102, 105, 488 S.E.2d 289, 291 (1997), in which this Court recognized that "[c]ounties may enact ordinances regulating land use in two fashions: one, pursuant to a comprehensive zoning plan, N.C. Gen. Stat. § 153-341 . . . , and two, pursuant to their police powers, N.C. Gen. Stat. § 153A-121 . . . ." Defendants contend this case is distinguishable from *Vulcan* because the County did not have a comprehensive zoning plan.

A zoning plan consists of ordinances designed to enable the government of counties to divide the county into districts or zones for the purpose of regulating the uses of each parcel of land in the county. James A. Webster, Jr., *Webster's Real Estate Law in North Carolina* § 18-14, at 863 (Patrick K. Hetrick & James B. McLaughlin, Jr., eds., 5th ed. 1999). In *Vulcan*, the moratorium enacted restricted " 'any building permits being issued in all areas not currently zoned if the building permit call[ed] for uses of the land other than stated in the land use plan.' " *Vulcan*, 103 N.C. App. at 780, 407 S.E.2d at 284. Defendant contends that unlike the County's moratorium, the moratorium in *Vulcan* "did not address any conditions affecting the health, safety or welfare of the citizens of Iredell County[,]" but "simply furthered the process already begun by the County to enact a complete countywide zoning ordinance." Therefore, any notice of a public hearing was unnecessary because the moratorium was allowable under the County's police powers pursuant to Section 153A-121, specifically stating as such, and *PNE AOA Media, L.L.C. v. Jackson Cty.*, 146 N.C. App. 470, 554 S.E.2d 657 (2001).

Section 153A-121, entitled "General ordinance-making power[,]" provides, *inter alia*, that a county's police powers, are those delegated to it by the Legislature to make ordinances which "define, regulate, prohibit, or abate acts, omissions, or conditions detrimental to the health, safety, or welfare of its citizens and the peace and dignity of the county[.]" N.C. Gen. Stat. § 153A-121(a) (2001). *See also Maynor*, 127 N.C. App. at 105, 488 S.E.2d at 291. Based on this statute, the defendant in *PNE* argued that it did not have to publish notice or

advertise that it was considering adoption of a moratorium that would prohibit PNE from being issued a billboard permit that conflicted with the Jackson County zoning code. On appeal, the *PNE* Court concluded that the general police powers of Section 153A-121 did not require notice in that situation, particularly since the ordinance stated it was enacted pursuant to Section 153A-121(a). *PNE*, 146 N.C. App. at 478-79, 554 S.E.2d at 662-63.

Despite defendants' contentions, we conclude the present case is analogous to *Vulcan*. As in *Vulcan*, the moratorium had the effect of making unzoned areas of the County subject to zoning prior to the adoption of a zoning ordinance. *Vulcan*, 103 N.C. App. at 782, 407 S.E.2d at 286. Essentially, the moratorium was itself a temporary comprehensive land use plan that allowed the County Planning Commission 120 days to study the adoption of a permanent land use plan (the SZPO) to regulate heavy industry within school zones. Our statutes recognize that a comprehensive zoning land use plan does not have to be complex, it need only

divide [a county's] territorial jurisdiction into districts of any number, shape, and area . . . . Within these districts a county may regulate and restrict the erection, construction, reconstruction, alteration, repair or use of buildings, structures, or land. . . .

A county may determine that the public interest does not require that the entire territorial jurisdiction of the county be zoned and may designate one or more portions of that jurisdiction as a zoning area or areas.

N.C. Gen. Stat. § 153A-342 (2003). By approving the moratorium, the Board divided the County into two areas—zones in which heavy industry was allowed and those in which it was not. An action of this nature is *authorized* under Article 18 even though the Board sought to use Section 153A-121 to justify the County division.

Also, like *Vulcan*, this case involves the approval of a moratorium that effectively denied plaintiff the issuance of a building permit pending enactment of the SZPO. Since the moratorium "deal[t] specifically with the issuance of building permits, [it] is . . . covered by Article 18[,]" and its adoption had to comply with the notice requirements of Section 153A-323. *Id.* Yet, only one advertisement noticing the public hearing at which the moratorium was adopted appeared in the local paper approximately ten days prior to the hearing, despite Section 153A-323's requirement that "[t]he board shall cause notice of

the hearing to be published once a week for two successive calendar weeks." N.C. Gen. Stat. § 153A-323.

Finally, defendants' reliance on our holding in *PNE* is misplaced. *PNE* involved the adoption of a moratorium prohibiting the issuance of a *billboard* permit. Ordinances imposing moratoriums of that nature are not governed by Article 18 of Chapter 153A; therefore, the defendant in *PNE* properly acted under Section 153-121's general police powers. In the case *sub judice*, defendants clearly adopted an ordinance that imposed a moratorium on the issuance of *building* permits, which are governed by Article 18 of Chapter 153A. Defendants cannot now avoid the notice requirements of Section 153A-323 simply because the moratorium stated it was "enacted pursuant to and by virtue of the general police powers granted Rutherford County pursuant to N.C.G.S. 153A-121."

In conclusion, since the moratorium was the type of ordinance authorized by Article 18, the County had to comply with the notice requirements of Section 153A-323. Although the County subsequently complied with those requirements before adopting the SZPO, defendants had already been ordered to issue Hanson a building permit because the moratorium was an invalid exercise of the County's police powers. Plaintiff, as the owner of the Property and the party properly substituted for Hanson in this action, is now therefore entitled to that permit. Accordingly, we reverse the trial court's denial of plaintiff's summary judgment motion and its grant of summary judgment in favor of defendants. To hold otherwise would allow counties to make zoning decisions without complying with the statutory requirements of Article 18. Further, reversal on this issue renders the need to address plaintiff's remaining assignment of error unnecessary. It should be noted, however, that our holding provides only that the trial court erred in enforcing the moratorium against plaintiff thereby preventing it from being issued a *building* permit. Thus, regardless of those arguments raised by the parties during re-hearing of this case as to plaintiff's application to the State for a *mining* permit, there was neither sufficient evidence in the record for this Court to view that issue nor did the order from which plaintiff appeals address any issues related to the mining permit.

Reversed.

Judges McGEE and CALABRIA concur.