DOUGLAS M. ROBINS, PLAINTIFF v. TOWN OF HILLSBOROUGH, DEFENDANT

No. COA05-165

(Filed 21 February 2006)

**1. Zoning— moratorium and subsequent amendment to ordinance—site application pending—asphalt plant**

The trial court erred by granting summary judgment in favor of defendant town based on the town's moratorium and subsequent amendment to the pertinent zoning ordinance while plaintiff's application for site plan approval with defendant to construct an asphalt plant within the town limits was pending, and the case is reversed and remanded, because: (1) plaintiff was entitled to rely upon the language of, and have his application considered under, the zoning ordinance in effect at the time he applied for the permit; and (2) to hold otherwise would .allow compliance with regulations and permitting to become a moving target to ever changing revisions or amendments.

**2. Zoning— moratorium and later permanent ban on asphalt plants—summary judgment—genuine issues of material fact—public purpose—equal protection—arbitrary and capricious standard**

The trial court erred in a zoning case by granting summary judgment in favor of defendant town after the town repeatedly failed to act on plaintiff's application for site plan approval to construct an asphalt plant within the town limits, and defendant

1

issued a moratorium and later a permanent ban on asphalt plants within the town and its extraterritorial zoning jurisdiction, because genuine issues of material fact existed as to: (1) whether the public purpose defendant town sought to accomplish by a total ban on asphalt plants is legitimate; and (2) whether defendant's decision to place a total permanent ban on manufacturing and processing facilities involving petroleum products within all areas located in the city limits and its extraterritorial zoning jurisdiction denied equal protection and was arbitrary and capricious.

Judge JACKSON dissenting.

Appeal by plaintiff from order entered 29 October 2004 by Judge James C. Spencer, Jr., in Orange County Superior Court. Heard in the Court of Appeals 12 October 2005.

*Smith, James, Rowlett & Cohen, LLP, by J. David James and Seth R. Cohen, for plaintiff-appellant.*

*Cranfill, Sumner & Hartzog, L.L.P., by Susan K. Burkhart, for defendant-appellee.*

TYSON, Judge.

Douglas M. Robins ("plaintiff") appeals from the trial court's order granting summary judgment in favor of the Town of Hillsborough ("defendant"). We reverse and remand.

## I. Background

On 21 January 2003, plaintiff filed an application for site plan approval with defendant to construct an asphalt plant within the town limits of Hillsborough. Georgia-Pacific Corporation owned the property on which the facility was to be constructed. Plaintiff had entered into a contract to purchase the property prior to submitting his application for site plan review, and subsequently purchased the property. At the time plaintiff filed his application, an asphalt plant was a permitted use in a general industrial (GI) district subject to a site plan review. The property on which the asphalt plant was to be constructed was zoned GI. In reliance on the zoning ordinance in effect at the time of his application, plaintiff spent approximately $100,000.00 to engineer and submit a site plan to comply with the conditional use requirements set forth in the ordinance and to prepare for the required public hearings.

**ROBINS v. TOWN OF HILLSBOROUGH**

[176 N.C. App. 1 (2006)]

The Board of Adjustment held public hearings on 12 February 2003, 12 March 2003, and 9 April 2003 to review plaintiff's application. The Board received evidence in favor of and in opposition to plaintiff's site plan submission, but reached no decision. At the close of the 9 April 2003 hearing, the Board of Adjustment again continued and scheduled a fourth hearing on 30 April 2003.

On 22 April 2003, the Town of Hillsborough Board of Commissioners adopted "An Ordinance Amending the Town of Hillsborough Zoning Ordinance to Temporarily Suspend the Review, Consideration and Issuance of Permits and Applications for Manufacturing and Processing Operations Involving Petroleum Products" ("the moratorium"). The moratorium provides:

> Notwithstanding any provision in this Zoning Ordinance to the contrary, no manufacturing and processing facility involving petroleum products as one of the materials being manufactured and/or processed (including, but not limited to, refineries for gasoline and other fuels, liquefied gas refineries, *asphalt plants*, finished petroleum products plants, plants which manufacture asphalt paving mixtures and blocks, asphalt shingles and/or coating materials, and plants manufacturing or processing petroleum lubricating oils and greases) shall be permitted, and *no application for any permit or approval to operate such facility shall be accepted, processed, reviewed or considered by the Town. This section shall apply to all applications for a permit or approval, including any application which is pending as of the effective date hereof.*

(Emphasis supplied). The "moratorium" further provides it shall be effective immediately upon adoption and shall remain in effect until 31 December 2003 unless sooner terminated by the Board of Commissioners or extended by the Board for a period of not longer than six months. Defendant issued a notice cancelling the 30 April 2003 Board of Adjustment's scheduled and continued hearing to further review plaintiff's site plan application.

On 24 November 2003, the Board of Commissioners amended Section 3.3 of the zoning ordinance to totally prohibit "manufacturing and processing facilities involving the use of petroleum products, such as . . . asphalt plants . . . in the Town of Hillsborough and its extraterritorial zoning jurisdiction." The ordinance stated, "This section shall apply to all applications for a permit or approval, including any application which is pending as of the effective date hereof." The

ordinance's amendment became effective 1 March 2004. The Board of Commissioners also extended the "moratorium" in effect until the effective date of the permanent ban.

Plaintiff filed a complaint and petition for judicial review and writ of certiorari in Orange County Superior Court on 22 January 2004. Defendant filed a motion for summary judgment, which the trial court granted on 28 October 2004. Plaintiff appeals.

## II. Issues

Plaintiff argues the trial court erred in granting defendant's motion for summary judgment because: (1) plaintiff is entitled to rely upon the language of the zoning ordinance in effect at the time he applied for the permit; (2) defendant violated N.C. Gen. Stat. § 160A-364 (2003) by failing to give notice of a public hearing or hold a public hearing prior to its decision to extend the moratorium; and (3) defendant's decision to permanently prohibit asphalt plants was arbitrary and capricious.

## III. Standard of Review

### A. Review of a Board of Adjustment Decision

When reviewing decisions of town boards or local municipalities, the superior court's task is to:

> (1) review the record for errors of law; (2) ensure that procedures specified by law in both statute and ordinance are followed; (3) ensure that appropriate due process rights of the petitioner are protected, including the right to offer evidence, cross-examine witnesses, and inspect documents; (4) ensure that the decision is supported by competent, material, and substantial evidence in the whole record; and (5) *ensure that the decision is not arbitrary and capricious.*

*Whiteco Outdoor Adver. v. Johnston County Bd. of Adjust.*, 132 N.C. App. 465, 468, 513 S.E.2d 70, 73 (1999) (citing *Coastal Ready-Mix Concrete Co., Inc. v. Board of Commissioners*, 299 N.C. 620, 626, 265 S.E.2d 379, 383, *reh'g denied*, 300 N.C. 562, 270 S.E.2d 106 (1980)) (emphasis supplied). This Court's "task, in reviewing a superior court order entered after a review of a board decision is two-fold: (1) to determine whether the trial court exercised the proper scope of review, and (2) to review whether the trial court correctly applied this scope of review." *Id.* (citing *Appeal of Willis*, 129 N.C. App. 499, 502, 500 S.E.2d 723, 726 (1998)). We review questions of law *de novo.*

*Harris v. Ray Johnson Constr. Co.*, 139 N.C. App. 827, 829, 534 S.E.2d 653, 654 (2000).

### B. Summary Judgment

Summary judgment is proper if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2003). The evidence must be considered in a light most favorable to the non-moving party. *Summey v. Barker*, 357 N.C. 492, 496, 586 S.E.2d 247, 249 (2003). When reviewing a lower court's grant of summary judgment, our standard of review is *de novo*. *Id.*

### IV. Plaintiff's Application for Site Plan Approval

[1] Plaintiff argues the trial court erred in granting summary judgment in favor of defendant because plaintiff is entitled to rely upon the language of the zoning ordinance in effect at the time he applied for the permit. We agree.

This Court addressed this issue in *Lambeth v. Town of Kure Beach*, 157 N.C. App. 349, 578 S.E.2d 688 (2003). In *Lambeth*, the petitioner applied to the Town of Kure Beach for a permit to widen his driveway to his corner lot residence from 19 feet to 24 feet on 15 March 2001. *Id.* at 350, 578 S.E.2d at 689. The zoning ordinance in effect at the time of the petitioner's application provided driveways across the town right-of-way were limited to 24 feet wide. *Id.* at 351, 578 S.E.2d at 689-90. Petitioner's permit was denied by the town's building inspector because the expansion would violate the ordinance as it had been applied to other landowners. *Id.* at 351, 578 S.E.2d at 690. An existing five foot wide concrete sidewalk extended from petition's house to the other street. *Id.* at 350, 578 S.E.2d at 689. On 19 June 2001, the town amended the ordinance to limit landowners to twenty-four feet of "impervious surface" across any town right-of-way. *Id.* at 351, 578 S.E.2d at 690. The trial court dismissed the petitioner's action and entered judgment in favor of the Town of Kure Beach. *Id.* at 351, 578 S.E.2d at 690.

This Court stated, "The amendment to the ordinance further restricts petitioner's use of his property. Petitioner was entitled to rely upon the language of the ordinance in effect at the time he applied for the permit." *Id.* at 352, 578 S.E.2d at 690 (citing *Northwestern Financial Group v. County of Gaston*, 329 N.C. 180, 405 S.E.2d 138 (1991)).

Similarly, in *Northwestern Financial Group* our Supreme Court considered:

> whether the plaintiff-developer which applied for a construction permit under a county ordinance that prescribed the procedures for obtaining a construction and operating permit of a mobile home park has a right to have its application reviewed under the terms of the ordinance in effect at the time the application for the permit was made.

329 N.C. at 181-82, 405 S.E.2d at 139. Gaston County adopted a mobile home park ordinance on 1 July 1986 and amended the ordinance in September 1987. *Id.* at 182, 405 S.E.2d at 139. The amended ordinance contained the following language: " '[t]he provisions of the Gaston County Mobile Home Park Ordinance Dated July 1, 1986, shall apply to those . . . plans . . . submitted to the Gaston County Division of Planning after July 1, 1986 and prior to the effective date of this ordinance.' " *Id.* The plaintiff submitted a plan for a mobile home park in June 1987 prior to the effective date of the amended ordinance. *Id.* Plaintiff submitted a revised plan shortly before the ordinance was amended. *Id.* at 183, 405 S.E.2d at 140. In response to repeated requests and demands from Gaston County, the plaintiff further revised and resubmitted plans several times after the 1987 amendment became effective. *Id.* at 183-86, 405 S.E.2d at 140-41. Gaston County refused to accept the fifth set of revised plans under the 1986 ordinance prior to the amendment. 329 N.C. at 185, 405 S.E.2d at 141. Our Supreme Court held, "Clearly, Northwestern established a right of review under the 1986 ordinance with the submission of plans both on 5 June 1987 (the first plan) and on 21 September 1987 (the second plan) unless that right was waived subsequent to those filings." *Id.* at 188, 405 S.E.2d at 143. The Court held Northwestern did not waive its right of review under the ordinance in effect when its plans were filed through either an abandonment of the first plans or a failure to act. *Id.* at 190, 405 S.E.2d at 144.

"The design and construction of a [land development] project is specifically tailored to comply with the regulations in effect at the time of application for permits." *Woodlief v. Mecklenburg County,* 176 N.C. App. 205, 212, 625 S.E.2d 904, 909 (2006). Under our Supreme Court's decision in *Northwestern Financial Group* and this Court's decisions in *Lambeth* and *Woodlief,* plaintiff "was entitled to rely upon the language of the ordinance in effect at the time he applied for the permit." *Lambeth,* 157 N.C. App. at 352, 578 S.E.2d at 690. "To

hold otherwise would allow compliance with regulations and permitting to become a moving target to ever changing revisions or amendments." *Woodlief*, 176 N.C. App. at 212, 625 S.E.2d at 909. Defendant's motion for summary judgment should have been denied. The trial court erred in granting summary judgment in favor of defendant because plaintiff was entitled to rely upon the language of, and have his application considered under, the zoning ordinance in effect at the time he applied for his permit.

## V.  Plaintiff's Constitutional Rights

[2] Plaintiff also argues defendant's decision to permanently prohibit "manufacturing and processing facilities involving the use of petroleum products" was arbitrary and capricious and violated his state and federal constitutional rights. In addition to repeatedly failing to act on plaintiff's application, defendant issued a moratorium and later a permanent ban on asphalt plants within the Town of Hillsborough and its extraterritorial zoning jurisdiction. The ordinance states:

> [M]anufacturing and processing facilities involving the use of petroleum products, such as, but not limited to refineries for gasoline or other fuels, liquefied gas refineries, asphalt plants, finished petroleum product plants, plants which manufacture *asphalt paving* mixtures and blocks, asphalt shingles, and/or coating materials, and plants manufacturing or processing petroleum lubricating oils and greases are *expressly prohibited in the Town of Hillsborough* and its extraterritorial zoning jurisdiction.

(Emphasis supplied).

Section 19 of article I of the Constitution of North Carolina contains the "Law of the Land Clause" and provides: "No person shall be . . . deprived of his life, liberty, or property, but by the law of the land." N.C. Const. art. I, § 19. This clause is synonymous with the Fourteenth Amendment due process clause of the federal Constitution. *Woods v. City of Wilmington*, 125 N.C. App. 226, 230, 480 S.E.2d 429, 432 (1997); U.S. Const. amend. XIV., § 1 ( ". . . nor shall any State deprive any person of life, liberty, or property, without due process of law . . . [.]"); *see also* U.S. Const. amend. V ("No person shall be . . . deprived of life, liberty, or property, without due process of law.").

In *County of Sacramento v. Lewis*, 523 U.S. 833, 845-46, 140 L. Ed. 2d, 1043, 1057 (1998), the United States Supreme Court stated:

> We have emphasized time and again that the touchstone of due process is protection of the individual against *arbitrary action of government,* . . . whether the fault lies in a denial of fundamental procedural fairness, . . . or in the *exercise of power without any reasonable justification in the service of a legitimate governmental objective* . . . [.]

(Internal citations and quotation marks omitted) (Emphasis supplied). " 'A State cannot under the guise of protecting the public arbitrarily interfere with private business or prohibit lawful occupations or impose unreasonable and unnecessary restrictions on them.' " *Indemnity Co. v. Ingram, Comr. of Insurance,* 290 N.C. 457, 471, 226 S.E.2d 498, 507 (1976) (quoting *Roller v. Allen,* 245 N.C. 516, 525, 965 S.E.2d 851 (1957).

Zoning regulations promulgated under the police power of the sovereign restrict the use of private property to promote the public health, the public safety, the public morals or the public welfare. *Village of Euclid v. Ambler Realty Co.,* 272 U.S. 365, 387, 71 L. Ed. 303, 310 (1926); *Zopfi v. City of Wilmington,* 273 N.C. 430, 433, 160 S.E.2d 325, 330 (1968). Zoning authority under the police power "is subject to the limitations imposed by the Constitution upon the legislative power forbidding *arbitrary and unduly discriminatory interference with the rights of property owners." Zopfi,* 273 N.C. at 434, 160 S.E.2d at 330 (emphasis supplied).

> The courts will not invalidate zoning ordinances duly adopted by a municipality unless it clearly appears that in the adoption of such ordinances the action of the city officials 'has no foundation in reason and is a mere arbitrary or irrational exercise of power having no substantial relation to the public health, the public morals, the public safety or the public welfare in its proper sense.'

*Armstrong v. McInnis,* 264 N.C. 616, 626-27, 142 S.E.2d 670, 677 (1965) (quoting *In re Appeal of Parker,* 214 N.C. 51, 55, 197 S.E. 706, 709 (1938)).

Defendant held three hearings to review plaintiff's site plan application under a permitted use in the ordinance. Rather than making a decision on plaintiff's application, defendant repeatedly delayed a decision and while the hearing was pending *totally prohibited* "manufacturing processing facilities involving the use of petroleum products" within the town limits of Hillsborough and its extraterritorial zoning jurisdiction.

**ROBINS v. TOWN OF HILLSBOROUGH**

[176 N.C. App. 1 (2006)]

Courts in other jurisdictions require a municipality to demonstrate a much greater substantial relationship between the ordinance and the public welfare where a total prohibition of a lawful activity is involved rather than an ordinance which merely confines a use to a particular district. Applicable analysis is set forth by the Pennsylvania Supreme Court in *Exton Quarries, Inc. v. Zoning Board of Adjustment*, 425 Pa. 43, 59, 228 A.2d 169, 179 (Penn., 1967) (citations omitted), and is particularly persuasive:

> The constitutionality of zoning ordinances which totally prohibit legitimate businesses such as quarrying from an entire community should be regarded with particular circumspection; for unlike the constitutionality of most restrictions on property rights imposed by other ordinances, the constitutionality of total prohibitions of legitimate businesses cannot be premised on the fundamental reasonableness of allocating to each type of activity a particular location in the community. We believe this is true despite the possible existence outside the municipality of sites on which the prohibited activity may be conducted, since it is more probable than not that, as the operator of the prohibited business is forced to move further from the property he owns, his economic disadvantage will increase to the point of deprivation.

The Michigan Supreme Court similarly held, "On its face, an ordinance which *totally* excludes from a municipality a use recognized by the Constitution or other laws of this state as legitimate also carries with it a strong taint of unlawful discrimination and a denial of equal protection of the law as to the excluded use." *Kropf v. City of Sterling Heights*, 391 Mich. 139, 155-56, 215 N.W.2d 179, 185 (Mich., 1974).

In *Beaver Gasoline Co. v. Zoning Hearing Board*, 445 Pa. 571, 577, 285 A.2d 501, 504-05 (Penn., 1971), the Pennsylvania Supreme Court also held an applicant meets his burden of overcoming the presumption of the constitutionality of the ordinance by showing a total ban of a legitimate use. The court shifted the burden to the municipality to show the validity of the ordinance. *Id.* ("Thereafter, if the municipality is to sustain the validity of the ban, it must present evidence to establish the public purpose served by the regulation.").

Plaintiff demonstrated defendant enacted a total prohibition on manufacturing and processing facilities involving the use of petroleum products within the municipality and adjoining areas after he had submitted an application for a use permitted by the zoning or-

dinance subject to site plan review. The burden shifted to defendant to show the public purpose of the ordinance. *Id.* A genuine issue of material fact exists whether the public purpose defendant sought to accomplish by a total and permanent ban on asphalt plants is legitimate and whether defendant's decision to place a permanent ban on asphalt plants was not arbitrary and capricious. *Id.*; *Armstrong*, 264 N.C. at 626-27, 142 S.E.2d at 677-78. The burden of proof rests upon defendant. *Beaver Gasoline Co.*, 445 Pa. at 577, 285 A.2d at 504-05.

## VI.  Conclusion

The trial court erred in granting summary judgment in favor of defendant. Plaintiff is entitled to a decision on his application based upon the ordinance in effect at the time the application was filed. *Northwestern Financial Group*, 329 N.C. at 185, 405 S.E.2d at 141; *Woodlief*, 176 N.C. at 212, 625 S.E.2d at 909; *Lambeth*, 157 N.C. App. at 352, 578 S.E.2d at 690.

A genuine issue of material fact also exists whether the public purpose defendant sought to accomplish by a total ban on asphalt plants is legitimate, and whether defendant's decision to place a total permanent ban on manufacturing and processing facilities involving petroleum products within all areas located in the city limits and its extraterritorial zoning jurisdiction denied equal protection and was arbitrary and capricious. In light of our decision it is unnecessary to address plaintiff's second assignment of error regarding notice. The trial court's order is reversed and this cause is remanded for further proceedings.

Reversed and Remanded.

Judge JOHN concurs.

Judge JACKSON dissents in a separate opinion.

JACKSON, Judge, dissenting.

For the reasons stated below, I respectfully dissent from the majority opinion.

Generally, "[t]he adoption of a zoning ordinance does not confer upon citizens . . . any vested rights to have the ordinance remain forever in force, inviolate and unchanged." *McKinney v. City of High*

*Point*, 239 N.C. 232, 237, 79 S.E.2d 730, 734 (1954). However, North Carolina recognizes two methods by which a landowner may establish vested rights in a zoning ordinance: (1) qualify pursuant to relevant statutes establishing such vested rights; or (2) qualify under the common law. *Browning-Ferris Industries v. Guilford County Bd. of Adj.*, 126 N.C. App. 168, 171, 484 S.E.2d 411, 414 (1997).

The relevant statute for establishing a vested right in this case is North Carolina General Statutes, section 160A-385.1(c) (2003), which provides: "[a] vested right shall be deemed established with respect to any property upon the valid approval, or conditional approval, of a site specific development plan . . . ." In the case *sub judice*, plaintiff never received approval of his site plan. Valid approval of a site plan is a prerequisite to the establishment of vested rights pursuant to North Carolina General Statutes, section 160A-385.1(c), and the absence of such approval is fatal to plaintiff's establishment of a statutory vested right.

Plaintiff concedes that he does not have a statutory vested right to approval of his site plan application, but argues that his rights did not vest statutorily due to defendant's refusal to issue a decision on his application. Plaintiff did not, however, allege in his complaint that defendant purposefully had delayed acting on his application and therefore that issue was not before the trial court. Generally, an issue not raised and argued before the trial court cannot be raised for the first time on appeal. N.C. R. App. P. Rule 10(b)(1) (2005); *Creasman v. Creasman*, 152 N.C. App. 119, 123, 566 S.E.2d 725, 728 (2002).

Even if plaintiff's argument that defendant purposefully delayed making a decision on plaintiff's application for site plan approval, which was not included in his initial complaint, were considered, plaintiff could not prevail. The evidence in the record on appeal clearly demonstrates that the failure to reach a decision on plaintiff's application was the result of ongoing consideration of various, complicated issues regarding the project. Plaintiff's attorney did not object to the continuation of any of the Board of Adjustment meetings and even informed the Board, when the lateness of the hour was pointed out, that his cross- examination of the witness testifying at the time would be extensive. While this complicated review was proceeding, the Town of Hillsborough enacted the moratorium on the acceptance, review, or consideration of new or pending applications for approval of any manufacturing or processing facility involving petroleum products. This sequence of events necessarily ended the ongoing review of plaintiff's application.

In the alternative, plaintiff argues that he is entitled to a vested right pursuant to the common law. A common law vested right to develop or build exists

> when: (1) the party has made, prior to the amendment of a zoning ordinance, expenditures or incurred contractual obligations 'substantial in amount, incidental to or as part of the acquisition of the building site or the construction or equipment of the proposed building,' *Town of Hillsborough v. Smith*, 276 N.C. at 55, 170 S.E.2d at 909; (2) the obligations and/or expenditures are incurred in good faith, *Id.*; (3) the obligations and/or expenditures were made in reasonable reliance on and after the issuance of a valid building permit, if such permit is required, authorizing the use requested by the party, *Id.* . . . and (4) the amended ordinance is a detriment to the party.

*Browning-Ferris*, 126 N.C. App. at 171-72, 484 S.E.2d at 414. The landowner bears the burden of proving all four elements to establish a common law vested right. *Id.* at 172, 484 S.E.2d at 414.

In his complaint, plaintiff contends that, prior to the moratorium, he had expended substantial sums of money and had incurred contractual obligations related to the acquisition of the property for his plant. Plaintiff further contends that these expenditures and obligation were incurred in good faith and in reasonable reliance on the approval of his Erosion Control Plan by Orange County. The reliance on the approval of the Erosion Control Plan is not sufficient, however, to establish a common law vested right in plaintiff. The approval is not a building permit, as is required to establish common law vested rights, nor is it similar in nature to a building permit. Further, the approval was granted by a governmental agency completely distinct, separate, and beyond the control of the Town of Hillsborough and was merely one step in the process of evaluation and approval of a site plan. Plaintiff did not have a valid building permit, or any permit issued by defendant whatsoever, upon which he could reasonably rely prior to the enactment of the moratorium and permanent ban. Consequently, no common law vested right arose.

As defendant had neither a statutory vested right nor a common law vested right to the approval of his site plan application, I would overrule this assignment of error.

The majority contends this Court previously has addressed the issue presented in the instant case in *Lambeth v. Town of Kure*

*Beach,* 157 N.C. App. 349, 578 S.E.2d 688 (2003), and that our Supreme Court considered a similar issue in *Northwestern Financial Group v. County of Gaston,* 329 N.C. 180, 405 S.E.2d 138 (1991). In both cases the applicant was held to be entitled to rely on the provisions of the applicable ordinance as it existed at the time of the initial application. However, I believe both of these cases clearly are distinguishable from, and inapplicable to, the facts of the instant case.

In *Lambeth,* the issue addressed on appeal was whether the subsequent amendment of the town's zoning ordinance mooted the petitioner's appeal of the *denial of his permit* under its prior ordinance. This Court held that, because the subsequent amendment further restricted the petitioner's use of his property and did not give him the relief sought, the petitioner's claim and injury remained viable. 157 N.C. App. at 352, 578 S.E.2d at 690. Accordingly, on appeal from the denial of his permit, the "[p]etitioner was entitled to rely upon the language of the ordinance in effect at the time he applied for the permit." *Id.* This holding pertained only to the petitioner's reliance on the prior ordinance in his appeal from the *denial of his permit.*

In the instant case, no decision ever was rendered regarding plaintiff's application. Accordingly, plaintiff's appeal is not from a decision based upon the criteria contained in the ordinance as it existed at the time of his application. Had a decision been made on plaintiff's application pursuant to the existing ordinance, equity would dictate that review of that decision be made utilizing the same criteria upon which the decision in question was made. As this was not the situation in the case *sub judice,* I would hold that plaintiff was not entitled to rely on the language of the ordinance in effect at the time of his application.

In *Northwestern Financial,* a developer submitted plans for a mobile home park pursuant to the provisions of the Gaston County Mobile Home Park Ordinances then in effect. 329 N.C. at 182, 405 S.E.2d at 139. A revised version of the Mobile Home Park Ordinances took effect approximately three months after the developer submitted his original plans. *Id.* The revised ordinances specifically provided that the provisions of the prior ordinances would apply to plans submitted prior to the effective date of the revised ordinances. *Id.* The developer subsequently submitted several revised plans in response to deficiencies identified by the reviewing agencies—one prior to the effective date of the revised ordinances and two after that date. *Id.* at 182-83, 405 S.E.2d at 140.

The Planning Board voted to disapprove the developer's fourth set of plans, in part, on the ground that any proposed plans would have to be in accordance with the revised ordinances. *Id.* at 185, 405 S.E.2d at 141. The developer attempted to submit a fifth set of plans which the County refused to accept for consideration under the previous ordinance provisions. *Id.* The developer appealed the decision.

On appeal, the Supreme Court held that the developer had established its right to review of the plans under the prior ordinances by its submission of the plans prior to the effective date of the revised ordinances. *Id.* at 188, 405 S.E.2d at 143. In reaching this holding, the Supreme Court determined that the plans all had been reviewed under the prior ordinance and that, by its very terms, the subsequent ordinance did not apply to plans submitted prior to the effective date of the subsequent ordinance. *Id.* at 186-87, 405 S.E.2d 142. Accordingly, the developer was entitled to review of the plans under the provisions of the previous ordinances and, if the plans conformed to the requirements of those ordinances, the ordinance provided "for a permit by right upon compliance with the terms of the ordinance, and such permit may not be denied on the basis that it is a hazard to the public welfare." *Id.* at 191, 405 S.E.2d at 144.

In contrast with the specific facts in *Northwestern*, the provisions of the moratorium and permanent ban subsequently adopted in the case *sub judice* specifically provided that they applied to all applications pending at the time of, or filed after, the effective date of the moratorium and amended zoning ordinance. As the Supreme Court's holding in *Northwestern* is based on specific provisions of the amended ordinance providing that applications pending prior to the effective date of the amendment would be reviewed under the terms of the original ordinances—a fact not present in the instant case—I believe *Northwestern* is inapplicable to the case at bar. In addition, the applicable Town of Hillsborough Ordinance did not provide for a permit by right upon compliance with the terms of the ordinance notwithstanding the fact that the use might be a potential hazard to the public welfare.[1]

---

1. For example, the Town of Hillsborough ordinance specifically addresses air pollution in Section 5.14 as follows:

Any permitted principal use, Conditional use, or accessory use that emits any 'air contaminant', as defined in G.S. 143-213, shall comply with applicable State of North Carolina standards concerning air pollution, as set forth in Article 21B of Chapter 143 of the North Carolina General Statutes.

**ROBINS v. TOWN OF HILLSBOROUGH**

[176 N.C. App. 1 (2006)]

The majority next holds that plaintiff's due process rights were violated by defendant's adoption of the moratorium and subsequent amendment of the zoning ordinance to prohibit manufacturing or processing facilities involving petroleum products. The majority bases its position on the contention that when a municipality prohibits an otherwise lawful activity, the municipality must demonstrate a more substantial relationship between the prohibition and the public welfare than when such lawful activity is merely restricted to particular areas to establish the constitutionality of the prohibition. I do not believe that this issue is properly before this Court.

On appeal, plaintiff challenges the validity of the procedures followed in extending the moratorium and argues that defendant's decision to permanently prohibit manufacturing and processing facilities involving petroleum products was arbitrary and capricious *as applied to this case*. Plaintiff does not allege that either the moratorium or the amended ordinance were facially invalid. Rather, plaintiff argues that the procedure utilized in extending the moratorium violated due process and that the amended ordinance violated due process as applied. Accordingly, the validity of the provisions of the amended ordinance itself is not in question on appeal as it has not been challenged by plaintiff.

The majority's holding, premised upon the constitutionality of the ordinance itself, effectively creates an appeal for plaintiff. "It is not the role of the appellate courts, however, to create an appeal for an appellant." *Viar v. N.C. DOT*, 359 N.C. 400, 402, 610 S.E.2d 360, 361 (2005). Further, an appellate court will not decide a constitutional question "unless it is properly presented . . . ." *State v. Muse*, 219 N.C. 226, 227, 13 S.E.2d 229, 229 (1941); *see also, State v. Blackwell*, 246 N.C. 642, 644, 99 S.E.2d 867, 869 (1957); *Carillon Assisted Living, L.L.C. v. N.C. Dep't of Health & Human Servs.*, 175 N.C. App. ——, 623 S.E.2d 629 (2006).

With regard to the due process arguments actually raised by plaintiff in his brief, I would hold that none of plaintiff's due process rights were violated in either the extension of the moratorium or in the application of the amended ordinance to the facts of this case.

---

No Zoning Compliance Permit, or Building Permit shall be issued with respect to any development emitting an 'air contaminant' until the State Division of Environmental Management has certified to the Zoning Officer that the appropriate State permits have been received by the applicant (as provided in G.S. 143-215.108) or that the applicant will be eligible to receive such permits and that the development is otherwise in compliance with applicable air pollution control regulations.

Plaintiff argues that there were genuine issues of material fact regarding whether defendant complied with all statutory and due process requirements in extending the moratorium. Defendant contends that public notice and hearing, pursuant to North Carolina General Statutes, section 160A-364, were required for the valid extension of the moratorium. Defendant argues that no further notice or hearing was required as the original moratorium, the validity of which was never challenged by plaintiff, included a provision for the extension of the moratorium by the Hillsborough Town Board.

Pursuant to North Carolina General Statutes, section 160A-364, notice of public hearing was published on 9 April and 16 April 2003 regarding a special Joint Public Hearing of the Hillsborough Town Board and the Planning Board on 22 April 2003. In pertinent part, the notice provided:

> 2. Zoning Ordinance Amendment. Amendment to establish a development moratorium on the processing, review and approval of applications for permits and approvals, including site plans, for all manufacturing and processing facilities which involve petroleum products (including asphalt) on all properties under the Town's zoning jurisdiction. The Town is currently working on amending the regulations for such facilities and desires to suspend the current permitting and approval process while modified development regulations are being considered. *The proposed development moratorium will expire on December 31, 2003, unless (1) sooner terminated by the Town Board or (II)*[sic] *extended by the Town Board, for a period not longer than six months, prior to December 31, 2003.*

(emphasis added). At the 22 April hearing, interested parties on both sides were given the opportunity to speak regarding the proposed moratorium. Three possible courses of action were presented: (1) enact no moratorium; (2) enact a moratorium on new applications; or (3) enact a moratorium on pending and future applications. During the discussion, the Chairman of the Planning Board asked how the moratorium would end and was told that it would end automatically upon the adoption of new language or on 31 December 2003 unless the Town Board took action to extend it. No exception or argument was made regarding this statement by anyone, including plaintiff. The third option was selected by unanimous vote of the Town Board. The enacted ordinance contained the exact language regarding the expiration of the ordinance that was included in the notice of hearing

which was published in accordance with North Carolina General Statutes, section 160A-364.

North Carolina General Statutes, section 160A-364 provides, in relevant part, "[b]efore adopting or amending any ordinance authorized by this Article, the city council shall hold a public hearing on it." The portion of the ordinance at issue in the instant case states:

> This Ordinance shall be effective immediately upon adoption, and shall remain in effect until 11:59:59 p.m. on December 31, 2003 unless sooner terminated by the Board of Commissioners, or unless extended for a period of not longer than six months by the Board of Commissioners acting prior to expiration.

Plaintiff argues that the requirements of section 160A-364 must be strictly construed based upon this Court's holding in *Sandy Mush Props, Inc. v. Rutherford Cty.*, 164 N.C. App. 162, 595 S.E.2d 233 (2004). In *Sandy Mush*, we held that the failure of the county to run two advertisements noticing a public hearing during which a proposed temporary moratorium was to be discussed, as required pursuant to North Carolina General Statutes, section 153A-323 (a statute applicable to county governments which is analogous to section 160A-364 which applies to municipal governments) resulted in the subsequently enacted temporary moratorium being invalid. *Id.* at 168, 595 S.E.2d at 237. The temporary moratorium was held invalid as a result of the failure to run the two required advertisements despite the fact that the plaintiff in the case had actual notice of the hearing and had the opportunity to, and did in fact, speak at the hearing in opposition to the temporary moratorium.

I agree with plaintiff that the requirements of section 160A-364 must be strictly construed. Section 160A-364 requires the holding of a public hearing prior to the adoption or modification of any ordinance, and that notice of that hearing be given once a week for two successive weeks prior to the hearing in a newspaper of general distribution in the area. N.C. Gen. Stat. § 160A-364. Plaintiff does not argue that the adoption of the ordinance originally enacting the temporary moratorium did not comply with the requirements of section 160A-364. Therefore, the validity of the temporary moratorium is not at issue.

Instead, plaintiff argues that the extension of the temporary moratorium modified the original ordinance and, therefore, additional notice and a second public hearing, as provided in section

160A-364, were required. However, the provisions of the original ordinance explicitly authorized an extension, of no more than six months, of the temporary moratorium by action of the Board of Commissioners. The exact language of this provision as adopted was included in the public notice of the hearing regarding the adoption of the temporary moratorium. Further, that provision was discussed at the public hearing without objection or comment by any party.

The provisions of the temporary moratorium ordinance specifically authorized the extension of the temporary moratorium by the Board of Commissioners. I find no authority which prohibits the inclusion of a pre-approved extension in a duly enacted ordinance. The extension of the temporary moratorium for two months on 1 December 2003 by the Board of Commissioners was, therefore, authorized pursuant to the terms of the ordinance. Accordingly, as section 160A-364 applies only to *adoption* or *modification* of ordinances, and that section must be strictly construed, I would hold that the extension of the temporary moratorium was not subject *to the requirements of section 160A-364 as it did not modify the orig-*inal ordinance.

Plaintiff also argues that the amendment to defendant's zoning ordinance banning manufacturing and processing facilities involving the use of petroleum products violated the Law of the Land Clause of Article I, section 19 of the North Carolina Constitution. The Law of the Land Clause of the North Carolina Constitution, N.C. Const. art. I, § 19, " 'is synonymous with due process of law as used in the Fourteenth Amendment to the Federal Constitution.' " *Rhyne v. K-Mart Corp.*, 358 N.C. 160, 180, 594 S.E.2d 1, 15 (2004) (quoting *In re Moore*, 289 N.C. 95, 98, 221 S.E.2d 307, 309 (1976)) (internal quotation marks omitted). "No process is due a person who is deprived of an interest by official action unless that interest is protected by law, *i.e.,* unless it is an interest in life, liberty or property." *Henry v. Edmisten*, 315 N.C. 474, 480, 340 S.E.2d 720, 725 (1986). As previously stated, I do not believe plaintiff had a vested right in the approval of his site plan application, and accordingly I would hold no process was due plaintiff regarding that application.

Assuming *arguendo* that plaintiff had a vested right in approval of his application, the evidence does not support a finding that defendant acted arbitrarily and capriciously in failing to make a decision on plaintiff's application. A municipal board of adjustment "has a duty to safeguard the health and safety of the entire community." *Signorelli v. Town of Highlands*, 93 N.C. App. 704, 710, 379 S.E.2d 55, 59 (1989).

It undoubtably would be a breach of this duty to approve plaintiff's application when there was evidence to support either approval or disapproval of the application and all evidence had yet to be received. Accordingly, I believe that defendant could not have approved plaintiff's application based on the evidence presented prior to the adoption of the moratorium without breaching its duty to the community. Therefore, the failure to render a decision on the application was neither arbitrary nor capricious.

I would affirm the order of the trial court.